

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA

    v.

MAKSIM SILNIKAU,

    Defendant.

Case No. 1:23-cr-108

## STATEMENT OF FACTS

The United States and the defendant, MAKSIM SILNIKAU (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From approximately 2021 to 2023, MAKSIM SILNIKAU was one of the creators and administrators of the Ransom Cartel ransomware strain. In this role, he coordinated and participated in a conspiracy ("the conspiracy" or "the Ransom Cartel conspiracy") to unlawfully obtain money and property by obtaining unauthorized access to victims' computers, installing ransomware on those computers, and then demanding that victims pay a ransom. As SILNIKAU himself described the Ransom Cartel conspiracy to a co-conspirator on April 27, 2022, he was interested in "fucking corporations, locking them, downloading their data and giving them nightmares." SILNIKAU, a Belarusian national, had been a member of Russian-speaking cybercrime forums since at least 2005 and was a member of the notorious and elite cybercrime website Direct Connection from 2011 until 2016.

2. Starting in approximately May 2021, in the Eastern District of Virginia and elsewhere, the defendant did knowingly and intentionally combine, conspire, confederate, and

1

agree with others to commit the following offenses against the United States, in violation of Title 18, United States Code, Section 371:

    a. to intentionally access a computer without authorization, and thereby obtain information from a protected computer, for purposes of commercial advantage and private financial gain, and in furtherance of a criminal and tortious act in violation of the laws of the United States, contrary to Title 18, United States Code, Section 1030(a)(2)(C), (c)(2)(B)(i), (ii);

    b. to knowingly cause the transmission of a program, information, code, and command, and as a result of such conduct, intentionally cause damage without authorization, contrary to Title 18, United States Code, Section 1030(a)(5)(A);

    c. to intentionally access a protected computer without authorization, and as a result of such conduct, cause damage and loss, contrary to Title 18, United States Code, Section 1030(a)(5)(C); and

    d. to transmit, with intent to extort from a person any money and thing of value, in interstate or foreign commerce, a communication containing a threat to cause damage to a protected computer, and containing a demand and request for money and a thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion, contrary to Title 18, United States Code, Section 1030(a)(7)(A), (C).

3.    Starting in approximately May 2021, in the Eastern District of Virginia and elsewhere, the defendant did knowingly and intentionally combine, conspire, confederate, and agree with others to commit the crime of wire fraud, that is, having devised and intending to devise any scheme and artifice to defraud, and for obtaining money and property by means of materially

false and fraudulent pretenses, representations, and promises, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, any writing, sign, signal, picture, and sound for the purpose of executing such scheme and artifice, contrary to Title 18, United States Code, Section 1343.

4.      On July 15, 2021, in the Eastern District of Virginia and elsewhere, the defendant did, during and in relation to a felony violation contained in chapter 47 of Title 18, United States Code, to wit: a violation of Title 18, United States Code, Section 1349, knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, in violation of Title 18, United States Code, Section 1028A(a)(1).

### Ransom Cartel's Operations

5.      Starting in May 2021, SILNIKAU began to recruit others from cybercrime forums to participate in the Ransom Cartel conspiracy. For instance, SILNIKAU and his co-conspirators recruited individuals to participate in the scheme who they believed had special skills and access to cybercrime-as-a-service resources. Some of these individuals were software developers with skill in the development of malware. Others were initial access brokers, who obtained and sold access to victim computer networks. Still others were website developers who created administrative infrastructure and tools for use by SILNIKAU and Ransom Cartel management.

6.      On May 4, 2021, members of the Ransom Cartel conspiracy posted a public advertisement on a cybercrime forum seeking access to compromised corporate computer networks located in the United States and elsewhere. The advertisement is translated in relevant part from Russian as follows:

> Will buy access to corporate networks.
> Will buy access to corporate networks in the following countries: US, CA, UK, AU, ZN, EU, and other countries except for CIS [Commonwealth of Independent States].

Access rights: Domain Admin, Local Admin, User
Revenue: from $10 million
Prices from $100 and up.
Not interested in previously sold accesses.
Will consider working with you on commission (%)
I conduct all deals only through the guarantor service of this forum. Guarantor service will
be paid for by me. [. . .]

In this advertisement, the conspirators indicated that they were seeking to buy access to corporate networks primarily in English-speaking countries. They specified that they were seeking elevated credentials that would allow them to move more freely and easily through the compromised networks. They were targeting companies with revenue over $10 million because such companies are likely to pay a higher ransom, and they were only seeking credentials that had not previously been sold because those networks are more likely to remain vulnerable. The conspirators indicated that they would share revenue from these cyberattacks with individuals who joined the conspiracy.

7.      SILNIKAU organized and oversaw the Ransom Cartel ransomware and conspiracy until his arrest in July 2023. SILNIKAU also personally obtained stolen credentials that could be used to access accounts of individuals for the purposes of carrying out the scheme and maintained control over ransom payments made by victims.

8.      To facilitate the activities of the Ransom Cartel conspiracy, SILNIKAU managed web developers who created a customized, private website where SILNIKAU and his co-conspirators could monitor and control various aspects of the operation. The website allowed SILNIKAU and his co-conspirators to communicate with one another, access and distribute stolen data, communicate with victims, manage and track victim ransom payouts, pay commissions to co-conspirators, and track the activities of co-conspirators. The location of the website was hidden using the Tor anonymity technology.

4

9.     The ransomware used by the Ransom Cartel conspiracy became operational in mid-2021 and targeted victims worldwide. Nevertheless, SILNIKAU on multiple occasions told individuals whom he was trying to recruit that his primary objective was to target and extort victims in the United States. For instance, on June 17, 2021, SILNIKAU told a potential supplier of access to victims' computer networks, "I only want US."

10.     Ransoms were demanded in Bitcoin cryptocurrency (BTC). Each victim was provided with a unique BTC address for payment. If paid, the ransoms were transferred through obfuscation mechanisms called "mixers," which are designed to obscure the origin and destination of particular payments. SILNIKAU and his co-conspirators then transferred the cryptocurrency to their private wallets, from which they transferred the funds through various means to a third party who provided SILNIKAU and other co-conspirators with cash and cryptocurrency.

11.     On June 22, 2021, SILNIKAU provided Ransom Cartel participants with computer network credentials for victim organizations in Texas and Japan.

12.     On July 14 and 15, 2021, SILNIKAU obtained stolen credentials and unauthorized access to the networks of victim companies located in Nebraska and Michigan.

13.     On July 15, 2021, SILNIKAU possessed stolen credentials for 400 corporate networks and shared some of them with co-conspirators. SILNIKAU sent a Ransom Cartel participant a list of login credentials that included the valid usernames and passwords of K.W. and S.W., who are real persons.

14.     In late November 2021, in an effort to improve the Ransom Cartel ransomware, SILNIKAU attempted to recruit malware coders with expertise in avoiding antivirus detection.

15.     On or about November 16, 2021, Ransom Cartel members compromised the networks of a company located in New York and executed a ransomware attack, resulting in loss

and damage. The coconspirators removed confidential data without authorization and demanded a payment of 10 BTC in exchange for decryption keys and not to release the stolen data.

16. In December 2021, SILNIKAU announced that he was changing the name of his ransomware operation from "XXX" to "Ransom Cartel" and publicized it on cybersecurity news sites. In early 2022, Ransom Cartel members targeted two corporate victims with annual revenue of approximately $10 billion and $500 million.

17. On or about March 5, 2022, Ransom Cartel members compromised confidential data of a company located in California, demanding a monetary payment not to release the stolen data.

18. On April 27, 2022, SILNIKAU told a Ransom Cartel member about his fully functional ransomware operation. He indicated that his operation had developed multiple forms of malware, a rewards programs for co-conspirators, and individuals whose job it was to hack into victims' networks and load the ransomware malware. In the coming months, SILNIKAU said, he intended to begin sending unsolicited commercial email, commonly known as "spam," to potential victims in the hopes of causing them to open email attachments.

19. On August 15, 2022, Ransom Cartel members compromised the networks of a company located in California, locking hundreds of the company's systems and servers and stealing confidential and commercial data. The attackers demanded a ransom of $1,000,000 in return for not publishing the stolen data. The attack caused hundreds of thousands of dollars in damage and loss and delayed the launch of a commercial product by two months.

20. On November 9, 2022, Ransom Cartel members compromised the networks of a company located in New Jersey. A user who encountered difficulties accessing a file discovered that all the files were locked, along with a ransom note demanding $700,000. Although the

company attempted to restore its systems from backups and believed the incident was fully contained, a few days later the company learned that it had again been targeted with the Ransom Cartel ransomware.

21.     On April 25, 2023, SILNIKAU engaged in negotiations with a potential co-conspirator about the terms on which to provide access to computers for hacking. In the course of these communications, SILNIKAU transmitted wires into the Eastern District of Virginia from outside the United States.

22.     In total, the Ransom Cartel conspiracy attacked approximately 18 victims and inflicted more than $3,500,000 in attempted and actual losses.

23.     At the time of SILNIKAU's arrest by Spanish authorities, a search of SILNIKAU's residence revealed a seed phrase for a cryptocurrency wallet belonging to SILNIKAU that contained approximately $877,175 in Tether (USDT). A seed phrase is used to generate a unique private key that can control the particular cryptocurrency in a particular cryptocurrency wallet. These USDT originated from the main BTC wallet used by SILNIKAU to receive payments from Ransom Cartel victims. Specifically, this BTC wallet received 34 transactions in ransomware proceeds totaling approximately 78.39 BTC, an amount valued at approximately $7.3 million at the time that this statement of facts is signed.

24.     This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

25.    The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Lindsey Halligan
United States Attorney

By:    _____

Jonathan S. Keim
Zoe Bedell
Assistant United States Attorneys

8

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, MAKSIM SILNIKAU, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
MAKSIM SILNIKAU

I am Roberto Espinosa, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Roberto Espinosa, Esq.
Attorney for MAKSIM SILNIKAU

9